## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**LAWRENCE ALAN COUSINS III,**

     Plaintiff,

v.                              Civil Action No. 3:24-cv-00195

**EXPERIAN INFORMATION**
**SOLUTIONS, INC.,**

     Serve:  CT Corporation System, R/A
              4701 Cox Road, Suite 285
              Glen Allen, Virginia 23060

     Defendant.

### COMPLAINT

Plaintiff, Lawrence Alan Cousins III ("Plaintiff" or "Mr. Cousins"), by counsel, brings this Complaint against Experian Information Solutions, Inc., ("Experian" or "Defendant") on the grounds and for the relief set forth herein:

### Preliminary Statement

1.     This is an action for actual, statutory, and punitive damages; costs; and attorney's fees pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act—"FCRA").

### Jurisdiction and Venue

2.     This Court has jurisdiction as to this case under the provisions of 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3.     Venue is proper under 28 U.S.C. § 1391(b)(1) and Local Civil Rule 3(C) because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this District and Division, and the Defendant transacts business within this District and Division.

**Parties**

4.      Mr. Cousins is a natural person currently residing in Henrico, Virginia. At all times relevant to the Complaint, Mr. Cousins was a "consumer" as defined by 15 U.S.C. § 1681a(c).

5.      Experian is a for-profit company doing business in the Commonwealth of Virginia. Experian is a "consumer reporting agency," ("CRA") as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties. Experian disburses such consumer reports to third parties under contract for monetary compensation.

**Factual Allegations**

***Plaintiff is Denied Credit and Discovers that Experian Reported Inaccurate Information***

6.      In May 2023, Plaintiff applied for a revolving credit account at USAA Savings Bank ("USAA").

7.      Plaintiff did not anticipate any difficulties in obtaining a credit account with USAA, as his only then-open credit account, a Best Buy credit card account with Citibank, N.A. (the "Citibank Account"), had been open for more than five (5) years and he had never made a late payment on the Citibank Account.

8.      USAA, however, denied Plaintiff's application for credit. Plaintiff was confused as to why he was denied when he had a perfect payment history on the Citibank Account, and so he requested and obtained a decision letter from USAA. The decision letter informed Plaintiff that USAA had based its decision on information from a credit report from Experian, and that the key factors from that report that affected the decision on his application for credit included serious delinquency on accounts, records of collections, and amounts past due on accounts. The decision

letter also informed him that the credit score USAA obtained from Experian was far lower than he had anticipated since, to his knowledge, he had a perfect payment history.

9.      Since Plaintiff only had one open credit account that had never been late, he was confused and frustrated. He immediately requested a consumer disclosure from Experian in order to find out what delinquencies, collections, and late payments were reported in his credit files.

10.      Experian mailed a consumer disclosure to Plaintiff, dated May 25, 2023 (the "Disclosure"). Plaintiff was shocked to discover the amount of false information that was reported in his credit files.

11.      The Disclosure falsely reported that Plaintiff had a credit account with Discover Bank that had been past due since April 2020, had a balance of over $2,300.00, and had been charged off. The Disclosure also inaccurately listed two (2) accounts that were in a collection status. Experian indicated that all of these accounts were "potentially negative account activity." The Disclosure also contained the false information that Plaintiff had a closed Comenity/Ulta account, and that there were numerous inquiries for his consumer information that he had never authorized.

12.      Plaintiff searched the Disclosure for other false information, and discovered the potential source of the inaccuracies: under the "Names" portion of the Disclosure, Experian listed numerous names that are similar to Plaintiff's name, but that are not Plaintiff such as "Lawren B Cousins."

13.      Under the "Social Security Number Variations" portion of the Disclosure, Experian listed the last four digits of a social security number that was not his—one digit of the number was incorrect.

14.      Plaintiff has only one social security number.

15.    Plaintiff has a sibling—a sister named Lawren Cousins. Plaintiff and his sister share 8 of 9 digits of their social security numbers. Variations of Plaintiff's sister's name were listed on the Disclosure six (6) times, and the incorrect social security number variation was the last four digits of his sister's social security number. The Disclosure also listed Plaintiff's sister's address multiple times, and listed employers that Plaintiff knew to be his sister's employers.

16.    Plaintiff realized that the negative information Experian reported to USAA were credit accounts, delinquencies, and collections that were due to his sister, not him. Experian had mixed his credit file with his sister's credit file.

17.    Experian included this information in Plaintiff's credit report because it does not maintain procedures to assure that information included in credit reports is not over-inclusive.

18.    Plaintiff disputed the inaccurate information with Experian, and on May 31, 2023, Experian generated and transmitted the results of the dispute, which indicated that Experian deleted the inaccurate information.

19.    Plaintiff then reapplied for a revolving credit account with USAA, and USAA approved his application.

### The FCRA's Requirements and Experian's Willful Failure to Comply

20.    Congress enacted the law concerning the reporting of consumer information in 1970 when it passed the FCRA.

21.    "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b) . . . ." *Burke v. Experian*

*Info. Sols., Inc.*, No. 1:10-cv-1064(AJT/TRJ), 2011 U.S. Dist. LEXIS 28896, at *11 (E.D. Va. Mar. 18, 2011).

22.    The requirements of Section 1681e(b) are clear:

> Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

23.    Further, as Experian is well aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendant has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) and that this is "central" to a CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 U.S. Dist. LEXIS 28896, at *13-14.

24.    As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." *Am. Heritage Dictionary* 920 (4th ed. 2000); *see also, Webster's Third New Int'l Dictionary* 1189 (1981) (defining "investigation" as "a searching inquiry").

*Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 (4th Cir. 2004).

25.     While a CRA does not violate § 1681e(b) if it follows reasonable procedures in reporting information, Experian does not follow reasonable procedures to assure maximum accuracy:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

26.     Experian's procedures for matching consumer information to a consumer file regularly result in the mixing of one consumer with another.

27.     Experian's procedures allow multiple social security numbers, with different names, to be associated with a single consumer's credit file.

28.     Experian has been well aware of the problems of mixed file consumer reports for at least 30 years.

29.     In 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian (formerly TRW, Inc.) in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991). In settling the enforcement action, Experian agreed to make the following changes:

> 1.   Maintain reasonable procedures to prevent the occurrence or reoccurrence of Mixed Files[2], including but not limited to:

---

[1]   Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

[2] Definition of Mixed File from Consent Order: "[A] Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *Id*. at 362.

a. Continuing its current efforts to improve its information gathering, storing, and generating systems to reduce the occurrence of Mixed Files, through modification of its software system to enable such system to accommodate and use, for matching and identification purposes, a Consumer's Full Identifying Information[3]; and

b. Not later than July 31, 1993, implementing and utilizing changes to its system designed to prevent, to the extent it reasonably can, the reoccurrence of Mixed Filed, once known;

2. Follow reasonable procedures to assure maximum possible accuracy of the information concerning the Consumer about whom the Consumer Report relates, including but not limited to:

a. Maintaining reasonable procedures, before Credit Information from TRW's Subscribers is utilized by TRW, to detect logical errors in such Credit Information; . . . .

*Id.* at 362-63.

30.     Experian has been sued numerous times for inaccuracies reported due to mixed credit files.

31.     Despite having knowledge of the inaccuracies caused by mixed files and the damage mixed files cause to consumers' credit, Experian has not implemented reasonable procedures to assure maximum possible accuracy of credit reports.

32.     Experian has substantial incentive to avoid implementing reasonable procedures to assure maximum possible accuracy: profit. Upon information and belief, the changes necessary to bring Experian in compliance with the FCRA would immensely increase Experian's operating costs.

33.     Experian's willful failure to comply with its duties under the FCRA caused Plaintiff substantial harm.

---

[3] Definition of Full Identifying Information from Consent Order: "[F]ull last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number. *Id.*

**Count One**
**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)**

34.    Plaintiff re-avers and incorporates all other factual allegations set forth in this Complaint.

35.    The Defendant violated 15 U.S.C § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintained concerning the Plaintiff.

36.    As a result of the Defendant's violations of 15 U.S.C § 1681e(b), Plaintiff suffered actual damages, including but not limited to: negative impact on his credit rating(s); lost opportunities to enter into consumer credit transactions; loss of credit; damage to reputation; embarrassment, frustration, humiliation, and other mental and emotional distress.

37.    Defendant's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n. In the alternative, the violations were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

38.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C § 1681n and § 1681o.

**Demand for Trial by Jury**

39.    Plaintiff demands trial by jury in this case.

**Conclusion**

WHEREFORE, Plaintiff prays that the Court enter a judgment for compensatory/actual, statutory, and punitive damages against the Defendant, for his attorney's fees and costs; for pre-judgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

Respectfully submitted,

**LAWRENCE ALAN COUSINS III**

By Counsel

*/s/ Stephen L. Flores*
Stephen L. Flores (VSB No. 92900)
FLORES LAW, PLLC
530 E. Main Street, Suite 320
Richmond, Virginia 23219
Telephone: (804) 238-9911
Facsimile: (804) 203-8717
E-mail: stephen@floreslawva.com

*Counsel for Plaintiff*